**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | | |
|---|---|---|---|
| SAID EL-KHATIB | ) | | |
| | ) | | |
| v. | ) | Cause No. | 1:19-CR-90-HAB |
| | ) | | 1:22-CV-152-HAB |
| UNITED STATES OF AMERICA | ) | | |

**OPINION AND ORDER**

Said El-Khatib ("El-Khatib") is serving a 60-month sentence for felon in possession of a firearm.  He now seeks to vacate his conviction and sentence in a petition to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 159), based on his trial counsel's alleged ineffective assistance. Because the Court finds that counsel was not ineffective in her representation of the Defendant, the Defendant's Motion must be denied.

**DISCUSSION**

**A. Factual and Procedural Background**

In July 2018, Alcohol, Tobacco and Firearms agents (ATF) in New York City received an anonymous tip that El-Khatib had expressed a desire to kill a NYPD officer. The tipster reported that El-Khatib was driving a white Dodge Challenger and had a firearm in the glovebox of the car. NYPD officers located the Dodge Challenger in Bronx, New York, and conducted a traffic stop. El-Khatib was the driver and had two active arrest warrants and a suspended license. Officers located a loaded Springfield Armory Model 1911, .45 caliber pistol inside the vehicle. ATF conducted a trace of the firearm and connected it to one of El-Khatib's younger brothers in Indiana. Officers also learned that El-Khatib and his brothers lived at an address on Harrison Street in Fort Wayne, Indiana.

While in the NYC Department of Correction, El-Khatib made several phone calls to his brothers instructing them to sell the firearms he had in his bedroom in Fort Wayne so that he could pay a New York attorney. Based on the New York investigation and the jail calls, police in Fort Wayne executed a search warrant at El-Khatib's residence. El-Khatib's brothers, Mahmood and Amir, and his father were present. Recovered from the house were several AR type rifles in Mahmood's room, additional firearms in Said's brother Adham's room (not present at the search), more firearms throughout the house, a large amount of ammunition, and cell phones. The search also uncovered stolen police equipment, including uniforms, light bars, and identification.

After the search of his residence, El-Khatib continued his jail calls to his brother. In one call, El-Khatib contacted Mahmood and requested that he "claim" the guns and get them back because they were valuable.

El-Khatib was prohibited from possessing any firearms or ammunition given his April 2006 sentence for felony criminal recklessness in Allen County, Indiana. This led to a Fort Wayne grand jury returning a three-count indictment against El-Khatib and two of his brothers on October 23, 2019. El-Khatib agreed to plead guilty to Count 1 pursuant to a written plea agreement in exchange for the government's low-end recommendation. (ECF No. 66). The plea agreement contained an appellate waiver precluding El-Khatib from appealing his conviction or sentence on any ground other than a claim of ineffective assistance of counsel. (ECF No. 58).

A draft presentence report (PSR) was prepared and filed. El-Khatib's attorney, Michelle Kraus (Attorney Kraus), prepared and filed five factual objections to the report. (ECF No. 90). The probation officer prepared an addendum to the PSR recognizing that most of the Defendant's objections were non-guidelines related but indicating that revisions sufficient to resolve counsel's objections were made to the report. (ECF Nos. 97, 98). At a status conference, the Court overruled

the remaining two objections finding that the PSR contained accurate information. (ECF No. 106). After resolving the objections, the final PSR reflected a total offense level of 13 and a criminal history category of VI corresponding to an advisory guideline range of 33-41 months.

At sentencing both the Government and Attorney Kraus sought a low-end sentence. Although the Court noted that the plea agreement called for a low-end guideline sentence, it concluded that El-Khatib's demonstrated and chronic lack of respect for the law justified a higher sentence. El-Khatib had amassed a record-breaking (in this Court) criminal history score of 26 points – double the amount required for the highest criminal history category – and he had done so even though eight of his cases did not receive points under the guidelines. Also concerning, the Court found that El-Khatib appeared to have a dangerous fixation with the police given his possession of stolen police equipment and the facts of his New York case where he allegedly threatened to kill a police officer. Based on these factors, the Court varied upward and sentenced El-Khatib to 60 months imprisonment to run consecutive to his undischarged terms of imprisonment in various state cases. El-Khatib now seeks relief under §2255 claiming that his court-appointed counsel was ineffective.

**B. Legal Standard**

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).  In order to proceed on a motion pursuant to § 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  *Id.*  A § 2255 motion is neither a substitute for nor a recapitulation of a direct appeal.  *Id.*; *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992),

overruled on other grounds by *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313; *see also McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a § 2255 movant may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008).

## C. Ineffective Assistance of Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right encompasses the right to effective assistance of counsel. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). The Court must then determine whether Counsel's performance was outside the wide range of professionally competent assistance. *Id.* "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from

best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). The Court's review of counsel's performance is "highly deferential[,] ... indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

To satisfy the second prong, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner need not show that Counsel's deficient performance "more likely than not altered the outcome," but that the likelihood of a different result was "substantial, not just conceivable." *Harrington*, 562 U.S. at 111-12.

El-Khatib sets out a laundry list of ways he contends Attorney Kraus' performance was deficient. For instance, he asserts that she lied to him, withheld information from him, threatened him, failed and refused his requests for action, refused to make objections to the PSR on his behalf, refused to meet with him, and had a possible conflict of interest. (ECF No. 159 at 4). Yet aside from his general allegations, El-Khatib fails to provide the facts underlying each of these assertions. Nowhere does he specify precisely what conduct he is complaining about, i.e., what lies he was told, what information was withheld, how he was threatened, and what requests were refused. Without any specificity, the Court is hard-pressed to find deficient performance by counsel.

That said, El-Khatib does attempt to detail one aspect of Attorney Kraus' performance – his belief there was a conflict between them that should have disqualified her representation. As best the Court can discern from El-Khatib, in 2004 Attorney Kraus represented him in a state court criminal matter where he was charged with criminal recklessness. See *State of Indiana v. Said El-*

*Khatib*, 02D04-0408-FB-000126. El-Khatib posits that Attorney Kraus' representation in that case "was NOT good" (ECF No. 162 at 1) and rants about the outcome. He then pivots to the present federal case to observe that the "Federal system does not play fair" and to describe Attorney Kraus as "a boxing coach that handcuffed his fighter and put him in the ring with an opponent – all under false pretenses, and a hidden agenda…" (*Id.* at 2-3). More of the same type of sweeping, unsupported allegations, are present throughout the rest of El-Khatib's reply.

If anything is clear from El-Khatib's reply brief, it is that he is not fond of Attorney Kraus. What is missing from his bombastic diatribe is evidence to support his allegations of either ineffective assistance or that an actual legal conflict of interest existed. Indeed, a legal conflict of interest, *i.e.*, an incompatibility between a lawyer's own private interest and those of the client, is distinguishable from a "conflict" in the sense that word is used in "common parlance" to describe a personality conflict. *See Plumlee v. Masto,* 512 F.3d 1204, 1211 (9th Cir. 2008). El-Khatib has not demonstrated the existence of any private interest of Attorney Kraus that would conflict with his own interests and create a legal conflict – all he has succeeded in doing is show that he and Attorney Kraus had a personality conflict. But the Supreme Court has made it clear that the Sixth Amendment does not guarantee "the right to a *meaningful attorney-client relationship*," *Morris v. Slappy*, 461 U.S. 1, 13 (1983) (emphasis in original) (internal quotes and citation omitted) – only the right to an effective advocate. And an effective advocate El-Khatib had whether he personally likes Attorney Kraus or not.[1]

---

[1] Despite his strong feelings now, El-Khatib never sought to have counsel removed from his case or have replacement counsel appointed.

It is no surprise that El-Khatib is unhappy with the substantial upward variance he received, but that was through no fault of Attorney Kraus. She made appropriate objections to the PSR[2] – which the Court overruled and made a reasoned argument for the Court to accept the low-end recommendation from the Government. The sentencing problem for El-Khatib was not caused by any deficiency of counsel, but by his own conduct scoring him 26 criminal history points. The Court highlighted the disturbing nature of the Defendant's prior convictions which included destructive behavior, threats of physical harm to others, invasion of privacy, attempted arson, and false reporting to police. When this history was coupled with El-Khatib's unlawful possession of a firearm, the Court was "extraordinarily troubled." The Court finds that Attorney Kraus' representation fell within the wide range of professional prevailing norms and that El-Khatib fails to establish deficient performance of counsel.

Because El-Khatib has not established the first prong, deficient performance, there is no need to evaluate the second prong of the *Strickland* test. Without deficient performance, there is no ineffective assistance of counsel. El-Khatib is not entitled to relief under § 2255 due to ineffective assistance of counsel.

D.  **Denial of Certificate of Appealability**

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255

---

[2] To the extent El-Khatib is arguing that Attorney Kraus did not make particular objections that she believed were not warranted or were futile, she was not obligated to make them to appease the Defendant. *Perez v. United States*, 286 F. App'x 328, 331-332 (7th Cir. 2008) (failure to raise a losing argument or file a futile motion to suppress does not constitute ineffective assistance of counsel)

proceedings, and 28 U.S.C. § 2253(c), the Court finds that El-Khatib has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

## CONCLUSION

For the reasons discussed, the Court DENIES Defendant's Motion to Vacate Sentence under 28 U.S.C. § 2255 (ECF No. 159) and DECLINES to issue a certificate of appealability.

SO ORDERED on June 27, 2023.

*s/ Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT